IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,                              Cr. No. S-02-0468 MCE

    vs.

MONTE D. McFALL,

    Defendant.                           ORDER

_____/

        On July 17, 2006, the court heard argument on T. Baxter Dunn's motion to quash a subpoena served on him by former co-defendant Monte McFall. Wayne Ordos appeared for Dunn; Victor Haltom and John Duree appeared for Mr. McFall.

A. Background

        On September 9, 2004, a fourth superseding indictment was returned against Monte McFall, N. Allen Sawyer, Baxter Dunn and others, charging Dunn with one count of conspiracy to commit extortion, 18 U.S.C. § 1951, four counts of honest services mail fraud, 18 U.S.C. §§ 1341 & 1346, one count of honest services wire fraud, 18 U.S.C. §§1343 & 1346, one count of attempting to harass witnesses, 18 U.S.C. § 1512(d)(4), and one count of making false statements to federal agents, 18 U.S.C. § 1001. Docket No. 264.

/////

1   On January 13, 2005, Dunn pleaded guilty to one count of honest services mail
2   fraud and agreed to cooperate with the government.  Docket No. 380 (plea agreement).  The
3   agreement provided, in part, that

> "cooperation" requires the defendant to : (a) respond truthfully and completely to all questions . . .; (b) never falsely inculpate or exculpate anyone. . . .
>
> Violation of the Plea Agreement. . . .[I]f any of his statements or testimony proves to be knowingly false, misleading, or materially incomplete, or if he otherwise violates this Plea Agreement, the government will no longer be bound by its representations concerning the limits on criminal prosecution and sentencing set forth herein.

Docket No. 380 ¶ II D.

The remaining defendants, except McFall, also pleaded guilty.  McFall was convicted after a lengthy jury trial.  Docket No. 451 (minutes).

On July 15, 2005, McFall filed a motion for new trial, alleging, among other things, that trial counsel should have continued the trial in order to secure Dunn's testimony, which would have been exculpatory, as reflected in the notes of his debriefing sessions with representatives of the government.  See Docket Nos. 512, 517.  On April 24, 2006, the Honorable Morrison C. England set an evidentiary hearing on the motion, to begin today, July 19, 2006.

At the hearing on this motion to quash, the court provided McFall's counsel the opportunity to submit a list of questions he anticipates posing to Dunn at the district court's evidentiary hearing; this he has done.  Counsel for Dunn has replied to the proposed questions by indicating that Dunn will invoke his Fifth Amendment right in response to all the questions.

B.   <u>Application Of the Sixth Amendment To The New Trial Motion Proceedings</u>

McFall argues that he has a Sixth Amendment and Fourteenth Amendment right to present witnesses in his favor at the hearing for the motion for a new trial.  He relies on <u>Washington v. Texas</u>, 388 U.S. 14 (1967) and <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973), which discuss the application of the compulsory process clause to criminal trials.  At the hearing

on the motion, counsel could not direct the court to any cases extending this right to a hearing on a motion for a new trial. There is some suggestion in the law that the right does not extend to proceedings other than trial. See Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987) (right to confront and cross-examine is a trial right, designed to prevent restrictions on questions during cross-examination; it does not create a right to pretrial discovery); but see Menefield v. Borg, 881 F.2d 696 (9th Cir. 1989) (under California law, motion for a new trial is a "critical state" of the proceedings and Sixth Amendment thus requires the appointment of counsel). Although it is not clear that McFall may rely on the Constitution in seeking to compel Dunn's attendance, the court's ultimate resolution of the motion does not require it to resolve this question.

C. The Motion To Quash

McFall argues broadly that a defendant loses his Fifth Amendment right not to incriminate himself as to those counts to which he pleaded guilty and to those dismissed as part of a plea bargain. He relies on United States v. Pardo, in which the court observed:

> It is clear that the privilege against self-incrimination ceases to apply once a witness has been convicted of the offense with respect to which he fears incrimination. . . . It is well established that once a witness has been convicted for the transactions in question, he is no longer able to claim the privilege of the Fifth Amendment and may be compelled to testify.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> Similarly, the privilege is also lost with respect to charges or counts of an indictment which are dismissed as part of a plea agreement. . . .Since promises to dismiss charges as part of a plea agreement are binding on the Government, a witness may not be exposed to prosecution on those charges, and the need for the privilege is lost.

636 F.2d 535, 542 (D.C. Cir. 1980) (citation omitted). The court in Pardo observed, however, that no argument was made that the witness in that case had a right not to testify concerning the one incident about which defense counsel sought to question him, "because of the possibility that other charges, such as a conspiracy charge, could be brought against him." Id. at 543 n.24.

/////

3

The District of Columbia Circuit has acknowledged the existence of Pardo, without necessarily embracing the sweep of its holding. For example, in United States v. Lugg, 892 F.2d 101, 103 (D.C. Cir. 1989), the court noted that the subpoenaed defendants had not been sentenced and so retained their Fifth Amendment rights; it also observed that

> [i]f for any reason the plea bargain became ineffective, for example if Robinson or Goff gave false testimony or if the plea bargain for any other reason came apart, the other charges might never be dismissed. Thus the court could not compel the testimony in the face of each witness's invocation of her Fifth Amendment privilege.

The Ninth Circuit has similarly opined:

> A voluntary guilty plea . . . is a waiver of the fifth amendment privilege only in regard to the crime that is admitted; the defendant retains the right against self-incrimination as to any crimes for which he may still be prosecuted. . . . A co-defendant who pleads guilty to one count of an indictment cannot be forced to testify by another defendant when there is still a genuine possibility that the pleading co-defendant could be prosecuted for other charges, either under the original indictment or in some later proceeding.

United States v. Moore, 682 F.2d 853, 856 (9th Cir. 1982) (citations omitted).

This court rejects any broad rule that a plea and a plea bargain extinguishes a defendant's Fifth Amendment rights for all purposes. Accordingly, the court turns to Dunn's reasons for claiming that his privilege protects him from appearing in response to McFall's subpoena.

1. State Charges

Dunn argues that he faces the possibility of being charged with a violation of California Government Code § 1090, which provides in pertinent part:

> Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity.

4

McFall counters that the statute does not cover the kind of conduct involved in Dunn's connection and contract with Sunlaw Corporation and that the statute of limitations has run.

### A. Statute of Limitations

The California statute of limitations for a variety of fraud offenses, including a violation of California Government Code § 1090, is four years from the discovery of the commission of the offense or after completion of the offense, whichever is later. See Cal. Pen. Code §§ 801.5 & 803(c)(4). The "discovery" component incorporates a requirement of diligence:

> [t]he crucial determination is whether law enforcement authorities or the victim had actual notice of circumstances sufficient to make them suspicious of [criminal activity] thereby leading them to make inquiries which might have revealed the [criminal activity].

People v. Lopez, 52 Cal.App.4th 233, 248 (3d Dist. 1997) (citation omitted). Although the parties hotly dispute when Dunn's activities with Sunlaw were discovered, the factual basis for Dunn's plea suggests that the governmental victim and/or state law enforcement officials "had actual notice of circumstances sufficient to make them suspicious," when Dunn began to lobby various officials with the City of Stockton, the Port of Stockton and San Joaquin County, which occurred between February through "at least August, 2001." Docket No. 380 (Factual Basis ¶ 3). Under this scenario, the statute of limitations on any charge under section 1090 would have started to run in August 2001 and run out in August 2005.[1]

### B. Application Of Section 1090

McFall argues that Dunn's arrangement with Sunlaw was a private contract unrelated to Dunn's duties and responsibilities as Sheriff of San Joaquin County; therefore, even

---

[1] In any case, it appears the latest the statute of limitations would have begun to run is July 16, 2002, when FBI agents Lester and Artley interviewed Dunn in his office, asking a range of questions relating to Sunlaw, agreements between and among Dunn, McFall and Sawyer, and Dunn's activities relating to San Joaquin County's power plant bidding process. See Opp'n to Mot. To Quash (Opp'n), Ex. A (docket no. 561).

if the statute of limitations has not run, Dunn has no exposure under section 1090.

In <u>Thompson v. Call</u>, the California Supreme Court described the conduct prohibited by section 1090:

> The proscribed interest certainly includes any *direct* interest, such as that involved when an officer enters directly into a contract with the body of which he is a member. California courts have also consistently voided such contracts where the public officer was found to have an *indirect* interest therein. In *Moody v. Shuffleton* (1928) 203 Cal.100, 262 P. 1095, for example, a county supervisor sold his printing business to his son and took a promissory note secured by a chattel mortgage on the business. Because the business helped to secure the value of the official's mortgage, we held that a conflict existed when printing contracts were awarded to the son.

38 Cal.3d 633, 645 (1985) (most internal citations omitted; emphasis in original). In addition, the California Attorney General has considered whether

> a sheriff in his individual capacity contract[ed] with the Board of Supervisors to furnish the county the use of his heavy construction equipment when such services are not being performed for the sheriff's office or department?

46 Op. Cal. Att'y Gen. 112 (1965). The Attorney General concluded that section 1090 did not preclude such a contract because

> The section is intended to proscribe situations where a public official might have a divided allegiance on a matter which might comes before him in his official capacity.

<u>Id</u>. at 113. Dunn has not explained how his private contract with Sunlaw, which was attempting in turn to secure a contract with the Port of Stockton, would cause him to have divided loyalties on any matter that might come before the Sheriff.[2] Accordingly, it does not appear that Dunn faces prosecution for any violation of California Government Code § 1090.

---

[2] Although Dunn has not argued the point, he did speak in his official capacity as Sheriff on the ammonia transport issue related to Sunlaw's competitor Calpine at a Board of Supervisors' meeting on June 26, 2001. Opp'n, Ex. A at 8-9. Even if his being in a position to provide such testimony is viewed as causing him to have divided loyalties, it would not alter this court's resolution of his motion, given his possible exposure to federal charges other than those on which he was indicted, as discussed below.

### 2. Federal Charges

Dunn argues that his testimony at the hearing might lead to conspiracy charges not covered by the indictments and plea agreement in this case or to a claim that he breached his cooperation agreement by giving misleading or incomplete information during the debriefing sessions.

At the court's invitation, McFall's counsel submitted proposed questions for Dunn; they all ask whether Dunn agreed with his co-defendants to take various actions in connection with their attempts to influence Calpine Corporation to withdraw its bid to build a power plant and to threaten economic harm to Calpine. See Docket No. 572. These questions focus on the conduct alleged in the Fourth Superseding Indictment and on charges resolved in the plea agreement. As noted, Dunn's counsel has filed a response, indicating that his client will assert his Fifth Amendment right in response to all the questions proposed. See Docket No. 574.

In United States v. Lowell, 649 F.2d 950 (3d Cir. 1981), the defendant Lowell was charged in a bribery conspiracy involving the General Services Administration and a company called Atlas Paint and Varnish. Lowell sought to call as a witness a former co-defendant, Montalbano, who had pleaded guilty to a conspiracy charge and had been sentenced; Lowell proposed four questions about Montalbano's dealings with Atlas Paint and Varnish. Id. at 961. Montalbano's lawyer raised his client's Fifth Amendment rights as a bar to his testimony. The district court upheld the claim; following his conviction, Lowell appealed.

/////
/////
/////
/////
/////
/////
/////

The Third Circuit found this assertion appropriate:

> Montalbano may have been indictable for any payoff schemes he may have participated in apart from Atlas, with or without the participation of Lowell. Thus, had Montalbano testified, he would have run the risk of self-incrimination even if his testimony was truthful and consistent with his prior statements. . . . On the other hand, if Montalbano's prior statements were untrue, truthful testimony in this trial could have exposed him to perjury charges, in addition to providing additional links in the chain of evidence necessary to uncover the full extent of Montalbano's tax evasion and receipt of bribes. . . .

Id. at 961-62. The court also observed, distinguishing Pardo:

> It would be impossible to limit the scope of Montalbano's testimony vis-a-vis Lowell to nonincriminating matters. Those crimes for which Montalbano still faces prosecution were part of the same pattern allegedly begun between Montalbano and Lowell.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> Although the standard we apply is generous to Montalbano, the cases establish that such generosity is inevitable.

Id. at 963. In addition, should examination or cross-examination suggest that Dunn had minimized his involvement during the debriefing or had otherwise misled the government about his role in threatening or extorting Calpine, he faces the possibility that his statements or testimony might constitute a breach of the plea agreement, leading to reprosecution. See United States v. Gerant, 995 F.2d 505, 508 (4th Cir. 1993) (defendant breached cooperation agreement by "intentionally omitting and withholding information and by providing false testimony"). Because of this danger, this court applies the generous standard referenced in Lowell and finds that Dunn could reasonably invoke his Fifth Amendment privilege against self-incrimination as ground for refusing to answer essentially all relevant questions at the hearing on McFall's motion for a new trial. See United States v. Kordel, 397 U.S. 1, 9 & n.14 (1970); United States v. Gomez-Rojas, 507 F.2d 1213, 1219 (9th Cir. 1975). Dunn's motion to quash shall be granted.

/////

/////

1         IT IS SO ORDERED.

2   DATED: July 19, 2006.

4                                          _____
                                           UNITED STATES MAGISTRATE JUDGE

8   2
9   dunn0468.mtq