UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Respondent,<br><br>          v.<br><br>J. TYLER REVES,<br><br>                    Petitioner. | No.  2:02-cr-00468-MCE-CMK<br>         2:10-cv-01330-MCE-CMK<br><br><br>**MEMORANDUM AND ORDER** |
| UNITED STATES OF AMERICA,<br><br>                    Respondent,<br><br>          v.<br><br>LYNN G. BEDFORD,<br><br>                    Petitioner. | No.  2:02-cr-00468-MCE-CMK<br>         2:10-cv-01402-MCE-CMK |

          Petitioners J. Tyler Reves ("Reves") and Lynn G. Bedford ("Bedford") each bring a motion to correct or set aside a criminal judgment pursuant to 28 U.S.C. § 2255.  The matters were referred to a United States Magistrate Judge pursuant to Eastern District of California local rules.

///

///

1

1    On September 21, 2011, the Magistrate Judge issued findings and

2    recommendations herein which were served on the parties and which contained a notice

3    that the parties may file objections within a specified time.  (ECF[1] Nos. 724, 725.)  Both

4    Petitioners filed objections to the findings and recommendations.[2]

5    In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule

6    304(f), this Court has conducted a *de novo* review of this case.  Having carefully

7    reviewed the entire file, the Court finds the findings and recommendations to be

8    supported by the record and by proper analysis and adopts them in full, subject to the

9    additional analysis provided below.

10

11    **BACKGROUND**[3]

12

13    Five defendants, including Bedford and Reves, received federal convictions for

14    their respective roles in corrupt profiteering schemes.  Bedford served on the

15    San Joaquin County Board of Supervisors, while Reves worked as Bedford's legislative

16    assistant.  San Joaquin County Prosecutor Allen Sawyer, former San Joaquin County

17    Sheriff T. Baxter Dunn, and lobbyist Monte D. McFall formed two private entities.  In one

18    of the schemes, they entered into a consulting contract with Sunlaw Energy Corporation,

19    seeking a profit through those entities if Sunlaw constructed the plant in the Port of

20    Stockton.  The five defendants each played various roles in attempting to use their public

21    powers to make sure Sunlaw received the project and not Calpine Corporation, which

22    submitted a competing bid.

23    ///

24

25    [1] All ECF references are to the Court's docket in case No. 2:02-cr-00468-MCE-CMK.

26    [2] Petitioners were co-defendants in the underlying criminal action and raised similar if not identical issues in both their motions and objections to the Magistrate Judge's Findings and Recommendations. Therefore, the Court will discuss the issues presented together.

27

28    [3] The facts are taken from United States v. McFall, 558 F.3d 951 (9th Cir. 2009), unless otherwise noted.

1    Sawyer and Dunn each pled guilty to one count of honest services mail fraud and

2 received six-month prison sentences in return for their cooperation.  A jury convicted

3 McFall of attempted extortion, conspiracy to commit extortion, honest services mail fraud

4 and witness tampering.  McFall received a 121-month sentence.  Bedford and Reves

5 each pled guilty to one count of making a false statement under 18 U.S.C. § 1001,

6 admitting they willingly made material false statements to Federal Bureau of

7 Investigation ("FBI") Agents during the criminal investigation.  (ECF Nos. 687-1, 687-3.)

8 Both Petitioners were sentenced to sixty months of probation.  (ECF Nos. 687-2, 687-4.)

9    On March 9, 2009, the Ninth Circuit reversed McCall's conviction on five counts,

10 including all of the counts relating to the power plant construction in Stockton.  United

11 States v. McFall, 558 F.3d 951, 955-58 (9th Cir. 2009).  The Ninth Circuit found the

12 evidence insufficient to support McCall's convictions for attempted extortion and

13 conspiracy to commit extortion.  Id. at 958.

14    On May 27, 2010, Reves moved to have his conviction for making false

15 statements vacated and set aside under 28 U.S.C. § 2255.  (ECF No. 680.)  On June 7,

16 2010, Bedford did the same.  (ECF No. 681.)  On June 24, 2010, the United States

17 Supreme Court held that the honest services mail fraud statute, to which Sawyer and

18 Dunn pled guilty to violating, only covered bribe and kickback schemes, not official

19 action taken by public employees to further their undisclosed financial interests.  Skilling

20 v. United States, 130 S. Ct. 2896, 2929-33 (2010).  As a result, this Court set aside and

21 vacated Dunn and Sawyer's convictions, which did not involve bribes or kickbacks.

22 (ECF Nos. 706, 714.)

23    Bedford and Reves essentially contend that because there was no honest

24 services mail fraud, extortion and conspiracy with regard to Sunlaw and Calpine, their

25 lies were not material to the FBI's investigation.  They request that this Court set aside

26 and vacate their sentences.  The United States opposed Petitioners' motions as untimely

27 filed and not within the exceptions to § 2255's one-year statute of limitations.  (ECF

28 No. 687 at 2-3.)

3

**ANALYSIS**

In his Findings and Recommendations, the Magistrate Judge recommended to deny Reves' and Bedford's motions without prejudice as untimely and also concluded that Section 2255, because of the statute of limitations issue, was not the appropriate form of relief.  (ECF Nos. 724, 725.)  Petitioners object to the Findings and Recommendations and put forth three theories:  (1) they filed this action within the one-year period because the statute of limitations did not start to run until the decisions in McFall and Skilling; (2) they are factually innocent, so Section 2255's limitations period is irrelevant; and (3) their circumstances warrant equitable tolling of the statute of limitations.  The Court will address each of these grounds below.

**A.      Section 2255 Statute of Limitations**

A one-year statute of limitations applies to Section 2255 actions and begins to run from the latest of:

> (1) [T]he date of which the judgment of conviction becomes final;
>
> (2) [T]he date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making the motion by such governmental action;
>
> (3) [T]he date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) [T]he date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

None of these statutory limitation provisions make Petitioners' motions timely.  McFall was not a Supreme Court case; therefore, Section 2255(f)(3) does not apply to that decision.  Even if the Court were to interpret McFall's vacated sentence as "facts supporting the claim" under § 2255(f)(4), neither Petitioner filed his present § 2255 motion in time.  The Ninth Circuit decided McFall on March 9, 2009.  Reves filed his motion on May 27, 2010, and Bedford filed his on June 7, 2010 – both more than a year after the Ninth Circuit decision.

Petitioners cannot rely on a due diligence argument under § 2255(f)(4) either.  The McFall decision involved Petitioners' codefendant, and neither Reves nor Bedford was in custody at the time.  They had the freedom and access to court decisions, and they put forth no reason explaining why they waited more than a year after the Ninth Circuit's decision in McFall to file their Section 2255 motions.

The Supreme Court decision in Skilling v. United States also does not help Petitioners.  The subject of Petitioners' false statements is crucial to this point.  Bedford and Reves pled guilty to making false statements regarding their knowledge of McFall's relationship with Sunlaw, not Sawyer and Dunn's activities.  (ECF No. 726 at 5; ECF No. 727 at 5-6.)  Skilling led this Court to vacate the sentences of Sawyer and Dunn, but the Ninth Circuit already had vacated McFall's honest services mail fraud conviction more than fifteen months prior to Skilling for lack of evidence.  Therefore, the decision in Skilling had no effect on McFall's conviction.

It is irrelevant whether McFall's conviction was vacated because the statute did not cover his conduct or because there was a lack of evidence.  What matters for the purposes of Petitioners' argument is that McFall's activity about which Petitioners lied was no longer criminal.  Because the Ninth Circuit vacated McFall's conviction on March 9, 2009, meaning Petitioners' lies no longer dealt with criminal conduct, the statute of limitations started running on March 9, 2009, at the latest.  The holding in Skilling did not vacate McFall's conviction; consequently, it cannot set the statute of limitations in this case.

1    Therefore, Petitioners' motions do not fall within any of the statute of limitations

2    provisions laid out in Section 2255(f).

3

4    **B.    Actual Innocence**

5

6    Petitioners next argue that the actual innocence doctrine renders Section 2255's

7    statute of limitations irrelevant in the present action.  Petitioners heavily lean on Lee v.

8    Lampert, 653 F.3d 929 (9th Cir. 2011), to support this argument.  In Lee, the Ninth

9    Circuit, relying on the Supreme Court decision in Schlup v. Delo, 513 U.S. 298 (1995),

10   explained actual innocence only is available within "the narrow class of cases . . .

11   implicating a fundamental miscarriage of justice."  Lee, 653 F.3d at 937.  Petitioners

12   must show "it is more likely than not that no reasonable juror would have convicted

13   [them] in the light of the new evidence."  Id. at 938.  Schlup sets out an "exacting

14   standard" but "does not require absolute certainty about the petitioner's guilt or

15   innocence."  Id.  "Where post-conviction evidence casts doubt on the conviction by

16   undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence,

17   that can be enough" to consider time-barred claims.  Id.  The petitioner must bring forth

18   "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy

19   eyewitness accounts, or critical physical evidence—that was not presented at trial."  Id.

20   The Court then weighs all of the evidence— old and new— to make "a probabilistic

21   determination about what reasonable, properly instructed jurors would do."  Id.

22   Petitioners put forth four pieces of "exculpatory post conviction evidence":  (1) the

23   Supreme Court's decision in Skilling; (2) the Ninth Circuit's decision in McFall; (3) Dunn's

24   vacated conviction; and (4) Sawyer's vacated conviction.  (ECF No. 726 at 4.)  Under a

25   straight reading of Lee and its progeny, the actual innocence doctrine would seem to

26   apply only to factual innocence, not legal innocence.  However, even assuming the

27   actual innocence doctrine encompasses legal innocence, Petitioner's new evidence is

28   insufficient.

6

1   As previously discussed, Dunn and Sawyer's vacated convictions and the holding in

2   <u>Skilling</u> do not have any bearing on Petitioners' claims.  That leaves Petitioners with the

3   Ninth Circuit's decision in <u>McFall</u> to support their actual innocence claims with regard to

4   their false statement convictions.

5       The elements for making false statements to federal agents in violation of

6   18 U.S.C. § 1001, to which both Petitioners pled guilty, are: (1) making a false statement

7   in a matter within the jurisdiction of the FBI; (2) willingly making the statement knowing

8   that it was untrue; and (3) the statement was <u>material</u> to the official activities of the FBI.

9   (<u>See</u> ECF No. 382 at 2; ECF No. 385 at 2) (emphasis added).  Thus, the actual

10  innocence issue turns on whether Reves' and McFall's statements were "material."[4]

11      The Supreme Court defined "material" as statements that have the "natural

12  tendency to influence, or [are] capable of influencing, the decision of the decisionmaking

13  body."  <u>Kungys v. United States</u>, 485 U.S. 759, 770 (1988) (internal citations omitted).

14  The court only needs to find the false statements "<u>could</u> have affected or influenced the

15  exercise of a governmental function."  <u>United States v. Salinas-Ceron</u>, 731 F.2d 1375,

16  1377 (9th Cir. 1984), <u>vacated on other grounds</u>, 755 F.2d 726 (9th Cir. 1985) (emphasis

17  added).  Petitioners argue that because no crime occurred, the misstatements could not

18  be material to a criminal investigation under Section 1001.  (ECF No. 726 at 6.)

19      While McFall's activity regarding the power plant turned out not to be criminal, that

20  does not necessarily mean Petitioners' statements about McFall did not influence the

21  FBI's investigation.

22  ///

23  ///

24

25      [4] Petitioners additionally argue their statements were nebulous and that because it turned out
    McFall was not engaged in criminal activity, they did not have any reason to lie.  (ECF No. 26 at 6.)

26  Therefore, they conclude that this Court should consider the vagueness of the statements coupled with the
    Petitioners' lack of motivation to lie and conclude the statements were not false.  This argument is clearly

27  deficient.  First, the fact the statements were allegedly "nebulous" is not a new fact.  It was an argument
    available at trial, making it inappropriate for a § 2255 motion.  Second, even if it turned out McFall's
    actions were lawful in retrospect, Petitioners did not know that at the time they made the statements at

28  issue.  Therefore, they still would have had motive to lie when questioned.

The Ninth Circuit vacated McFall's conviction not because he did not have an affiliation with Sunlaw, which is what Petitioners pled guilty to making false statements about, but because there was a lack of evidence to support a conviction that McFall attempted to extort Sunlaw's competitor, Calpine.  McFall, 558 F.3d at 957-58.  Petitioners' statements still were false and very well could have influenced the FBI's investigation of McFall.  Furthermore, the actual innocence test requires a court find that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  Lee, 653 F.3d at 938 (emphasis added).  A reasonable juror could find Petitioners' false statements regarding McFall's relationship to Sunlaw to be material to the FBI's investigation.  Therefore, the actual innocence exception did not toll the statute of limitations in this case.[5]

## C.    Equitable Tolling

In the alternative, Petitioners argue "the principles of equitable tolling" should extend the time they have to file their Section 2255 claims.  (ECF No. 726 at 8.)  "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (internal citations and quotation marks omitted).  Equitable tolling is "unavailable in most cases," Bills v. Clark, 628 F.3d 1092, 1097 (9th Cir. 2010), and it is "a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."  Wallace v. Kato, 549 U.S. 384, 396 (2007).  The petitioner must show those extraordinary circumstances "made it impossible" to file a timely petition.

---

[5] Additionally, Reves and Bedford contend the FBI's investigation was outside its jurisdiction. (ECF No. 726 at 5; ECF No. 727 at 7.)  Whether there was sufficient evidence of such criminal activities to support a conviction is irrelevant to the FBI's jurisdiction.  Similarly, whether bribery or kickbacks existed sufficient to support an honest services mail fraud conviction could only be determined after the FBI conducted an investigation.  Therefore, the FBI's investigation into a potential extortion or fraud scheme is not unconstitutional, even if it ultimately turned out no evidence of bribery or kickbacks existed.

1   Porter v. Ollison, 620 F.3d 952, 959 (9th Cir. 2010).  The Supreme Court endorsed a

2   "flexible," "case-by-case" approach to using equitable tolling that draws guidance from

3   decisions made in similar cases.  Bills, 628 F.3d at 1096 (quoting Holland, 130 S. Ct. at

4   2563).

5           Petitioners, in attempting to meet their burden of proof, claim the rulings in McFall

6   and Skilling, coupled with Dunn and Sawyer's vacated sentences, constitute

7   "extraordinary circumstances."  Petitioners further assert that because they filed their

8   claims within a month of Skilling, they meet the diligence requirement.  (ECF No. 726 at

9   8.)  However, as previously noted, Petitioners each waited more than a year after the

10  Ninth Circuit's decision in McFall to file their respective petitions.  Furthermore,

11  Petitioners filed their motions before the Supreme Court decided Skilling.  Thus, it is

12  clear the overbroad statute that Skilling narrowed did not make it impossible for

13  petitioners to file their Section 2255 motions within the statutory period.  Petitioners point

14  to no cases that found "extraordinary circumstances" on similar facts and offer no

15  explanation for their delay following the Ninth Circuit's decision in McFall.  Accordingly,

16  equitable tolling does not apply to Petitioners' motions.

17          For the reasons stated above, this Court adopts the Magistrate Judge's Findings

18  and Recommendations and denies Petitioners' motions as untimely.

19

20          **D.      Certificate of Appealability**

21

22          Before a movant can appeal a decision from this Court, a certificate of

23  appealability must issue under 28 U.S.C. § 2253(c).  See Fed. R. App. P. 22(b); see also

24  28 U.S.C. § 2255.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only

25  if the applicant has made a substantial showing of the denial of a constitutional right."

26  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of appealability

27  indicating which issues satisfy the required showing or must state the reasons why such

28  a certificate should not issue.  See Fed. R. App. P. 22(b).

Here, given the determination that Petitioners' codefendants' convictions have been overturned, the Court will issue a certificate of appealability.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. The Findings and Recommendations filed September 21, 2011 and September 22, 2011 (ECF Nos. 724, 725) are ADOPTED IN FULL, subject to the additional analysis provided above;

2. Petitioners' motions pursuant to 28 U.S.C. § 2255 (ECF Nos. 680, 681) are DENIED as untimely;

3. Petitioners' motions for leave to file an amended motion (ECF Nos. 718, 723) are DENIED;

4. Petitioner Bedford's Motion for Reconsideration (ECF No. 720) is DENIED;

5. The Court issues a Certificate of Appealability; and

6. The Clerk of the Court is directed to close companion civil cases Nos. 2:10-cv-01402-MCE-CMK and 2:10-cv-01330-MCE-CMK.

IT IS SO ORDERED.

DATEDC:  March 28, 2013

_____

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE